<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRAIDY GUREVITCH, INDIVIDUALLY, AS ADMINISTRATOR OF THE ESTATE OF CHAIM GUREVITCH, DECEASED, AND AS MOTHER AND NATURAL GUARDIAN OF N.G., <br><br> *Plaintiffs,* <br><br> v. <br><br> GAIL J. CURTIS, CURTIS MUSIC AND ENTERTAINMENT, INC., CURTIS MUSIC AND ENTERTAINMENT, LLC, JOHN LEE CURTIS, <br><br> *Defendants.* | Civil No.: 2:21-CV-14592 (KSH) (CLW) <br><br><br> <u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Plaintiff Fraidy Gurevitch's husband, Chaim Gurevitch, was fatally injured after he was struck by a car driven by defendant Gail J. Curtis.[1]  Gurevitch sued Curtis individually, as administrator of her husband's estate, and on behalf of their minor son.  Before the Court is plaintiff's motion for summary judgment as to defendant's alleged negligence and for violation of the New Jersey Uniform Fraudulent Transfers Act ("UFTA"), N.J.S.A. 25:2-25 to 37, based on certain transfers of Curtis's assets after the accident.  Defendant moves for partial summary judgment on plaintiff's punitive damages claim under the UFTA, arguing that no facts have been

---

[1]  For purposes of these motions, the Court will refer to Gail Curtis as the defendant, and the remaining defendants by name.

set forth to show that she acted with malicious intent or wanton and willful disregard in making the transfers.

## II.     Factual Background

The circumstances of the accident are as follows, based on the facts that are not in dispute.

At approximately 7:59 PM on March 14, 2021, defendant drove into the back of the Gurevitch car, which was parked on the shoulder of Ocean Avenue in Long Branch, New Jersey. (D.E. 105, FPTO § 5, Stipulated Facts, ¶ 5; D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 13; D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 3-4.)  Chaim Gurevitch was standing at the rear of his car so that he was pinned between the two cars on impact. (*See* D.E. 101-3, Pl. R. 56.1 Stmt. ¶¶ 29-30 & Ex. 1, Deposition of Fraidy Gurevitch at 27:15-30:13; Ex. 5, Police Report at 18.)  Plaintiff and the Gurevitch's son were inside the car as it was hit. (D.E. 105, FPTO § 5, Stipulated Facts, ¶ 5.) Two days later, Chaim Gurevitch succumbed to his injuries. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 31 & Ex. 5, Police Report at 18.)

In the days and months after the accident, defendant sold three parcels of property located at 27, 29, and 31 Melrose Terrace in Elizabeth, New Jersey. (D.E. 105, FPTO § 5, Stipulated Facts, ¶¶ 6-8.)  These were the only parcels of property that she owned. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 14; D.E. 103-1, Def. R. 56.1 Counterstatement ¶ 16.)  Two of these transfers were to her son, John Lee Curtis ("John Lee"). (D.E. 105, FPTO § 5, Stipulated Facts, ¶¶ 6, 8.)  Specifically, on March 29, 2021, defendant transferred 29 Melrose Terrace to John Lee for $1.00. (*Id.* at ¶ 6.) An elderly tenant rents this property. (D.E. 103-1, Def. R. 56.1 Counterstatement ¶ 27.)  On July 9, 2021, defendant transferred 27 Melrose Terrace to John Lee for $1.00; she still lives on this

property. (D.E. 105, FPTO § 5, Stipulated Facts, ¶ 8; D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 9; D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 32, 39.)

Two days before the transfer of her residence, defendant was diagnosed with terminal ovarian cancer. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 20; D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 2, 39.)

In between those transfers to John Lee, defendant sold 31 Melrose Terrace to bona fide purchasers for $480,000.00 on May 28, 2021. (D.E. 105, FPTO § 5, Stipulated Facts, ¶ 7.) Part of the proceeds of that sale were used to pay off a home equity loan on the property. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 16; D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 19, 23.) The remainder was transferred to a Wells Fargo bank account in John Lee's name. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 16 & Ex. 2, Deposition of Gail Curtis ("Curtis Dep.") 46:17-47:14; Ex. 15, Deposition of John Lee ("John Lee Dep.") 48:7-50:3.) John Lee uses these funds to pay for defendant's daily living expenses. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶¶ 16, 22; Curtis Dep. at 45:14-47:10; John Lee Dep. at 46:23-47:14, 49:18-50:20.)

### III. Procedural History

On August 4, 2021, plaintiff filed the instant lawsuit based on diversity jurisdiction. (D.E. 1, Compl.) She then filed a second amended complaint, voluntarily removing the bona fide purchasers from the action. (D.E. 44, 52.) In the operative Third Amended Complaint, plaintiff raises claims of negligence and a survival action, N.J.S.A. 2A:15-3 (Count One); wrongful death, N.J.S.A. 2A:31-1 to 6 (Count Two); negligent infliction of mental distress (Count Three); and violation of the UFTA, N.J.S.A. 25:2-20 (Count Four). (D.E. 68.) On February 15, 2023, Magistrate Judge Waldor directed defendant to produce information as to her

assets at the time of each of her post-accident transfers but denied plaintiff's request for information as to defendant's current assets. (D.E. 74, 81.)

### IV.  Standard of Review

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and material if the evidence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] failure of proof on one of the essential elements of a claim renders both of these requirements met." *Pyfer v. Am. Mgmt. Servs. (In re Nat'l Pool Constr., Inc.)*, 598 F. App'x 841, 844 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Catrett*, 477 U.S. at 322-25. On that showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may rely on "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," so long as the facts presented can be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)(A), (c)(2); *Celotex Corp.*, 477 U.S. at 324. "Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (citation omitted).

At the summary judgment stage, the Court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995)). The Court may not, however, resolve credibility disputes or weigh the evidence. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425, 428-29 (3d Cir. 2013).

V.  Discussion

    A. Plaintiff's Motion for Partial Summary Judgment

        1. Negligence Claim

Plaintiff argues that defendant is negligent for the car accident as a matter of law, contending that her action of rear-ending a stopped vehicle and her subsequent guilty plea[2] to unsafe driving necessitates such a finding. (D.E. 101-2 at 9-11.) Defendant counters that she has adequately pled an incapacitation defense that she blacked out just prior to the accident. (D.E. 103 at 11-12.) Defendant offers evidence in support. There is her sworn deposition testimony:

> Q. At the time of the accident, did you believe that you were in a travel lane when you were on the shoulder?
>
> . . . .
>
> A. I blacked out.
>
> Q. I mean, as of today, did you believe or do you believe that you were in the travel lane when you were in a shoulder?

---

[2] Defendant contends that since her guilty plea was accompanied by a civil reservation—providing that the plea "shall not be evidential in any civil proceeding"—it cannot be used by plaintiff in this proceeding. (D.E. 103 at 10-11 (citing N.J. Ct. R. 7:6-2(a)(1)).) However, plaintiff is correct that this Court, when sitting in diversity, is to apply federal procedural law and state substantive law. (D.E. 104 at 1 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).) Thus, defendant's claim is meritless, as this Court is bound by the Federal Rules of Evidence, not the New Jersey rules, when assessing the admissibility of evidence.

      A.  I blacked out.  I don't know.

(Curtis Dep. at 25:18-23; *see also id.* 16:10-16, 19:11-14.)  Defendant also points the police report of K. Morris, a responding officer to the accident, who reported that defendant "was unsure what had just occurred, and was unsure what her vehicle had just struck" as evidence that she was disoriented and lacked memory of the incident.  (D.E. 101, Ex. 5, Police Report at 4; D.E. 103 at 12, 18.)  Additionally, John Desch, P.E., defendant's accident reconstruction and traffic engineering expert, concluded defendant struck the curb "at least twice prior to impact with the rear of the parked Gurevitch Honda," which is indicative of someone who did not have control over their vehicle.  (D.E. 101, Ex. 10, Report of John A. Desch at 22-23; D.E. 103 at 17.)

      Plaintiff does not meaningfully address the evidence surrounding defendant's incapacitation defense.  Rather, she relies on defendant's plea to unsafe driving as *prima facie* evidence of negligence.  (D.E. 104 at 1-2 (citing *Carnero v. Deitert*, 10 F. Supp. 2d 440 (D.N.J. 1996) (Lifland, J.); *Eaton v. Eaton*, 226 N.J. Super. 62 (App. Div. 1988)).)  Plaintiff further submits that courts have found summary judgment appropriate as to a defendant's liability where the defendant rear-ended a stopped vehicle.  (D.E. 101-2 at 10-11 (citing *Mangual v. Berezinsky*, 428 N.J. Super. 299 (App. Div. 2012); *Buzby v. Momjian*, 2015 WL 1510455 (D.N.J. Apr. 15, 2015) (Simandle, J.)).)  However, these cases are factually and procedurally distinguishable.

      In *Carnero*, the defendant driver rear-ended the plaintiff at a traffic light and subsequently pled guilty to careless driving.  10 F. Supp. 2d at 441-42.  The district court found the defendant liable for the accident as a matter of law because she "failed to demonstrate a dispute of fact material to her negligence," that is, she failed to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 444-46 (citations omitted).  The court noted that in her deposition the defendant testified that she was driving behind the plaintiff as both cars

approached a yellow light, which contradicted her later argument that the plaintiff cut in front of her. *Id.* at 445. The court also discounted the defendant's argument in her motion papers that she did not have a clear memory of the accident, because this contradicted her deposition testimony that she was paying attention while driving and "saw everything happen at once basically." *Id.* The court thus concluded that the defendant failed to offer any disputed fact to suggest that the tailgating accident was not squarely her fault. *Id.* at 446.

In *Eaton*, the Appellate Division held that the trial judge failed to adequately instruct the jury on the defendant's negligence surrounding a single vehicle accident. 226 N.J. Super. at 63, 66-67. At trial, there was a dispute as to whether the defendant or her late mother was driving, and the defendant also offered a "phantom car" defense to her or her mother's negligence—that at the time of the accident, an unidentified car drove them off the road. *Id.* at 63-64. The court held it was plain error for the trial judge to fail to instruct the jury that "if it found that defendant was driving and that she was not forced off the road by a phantom car which met her head-on in the westbound lane, it might draw an inference of negligence from the circumstances of the accident." *Id.* at 63-64. The Appellate Division found this error "was compounded by the trial judge's charge dealing with defendant's careless driving plea of guilty," since violation of the careless driving statute was conclusive of negligence. *Id.* at 66. This case, while helpful to plaintiff's argument that defendant is *prima facie* negligent by virtue of her guilty plea, is thus distinguishable since here defendant *has* pled a defense to negligence—incapacitation.

Similarly, in *Mangual*, the plaintiff moved for partial summary judgment on liability based on the defendant's car "leaving the roadway and causing [plaintiff] injury in the absence of mechanical failure, hazardous roadway conditions or collision with another vehicle." 428 N.J. Super. at 312. The court held that the defendant's mere denial of his negligence and testimony

7

that he "was driving normally just before the . . . [c]ar went out of control" failed to set forth the existence of any genuine issue of material fact for trial and entered partial summary judgment as to his liability. *Id.* at 312-14; *see also Buzby*, 2015 WL 1510455, at *1-2 (finding summary judgment appropriate where the defendant rear-ended the plaintiff's vehicle and offered no opposition to the plaintiff's motion).

The Court finds that at this juncture, defendant has "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)). The Court also notes that the parties spend a great deal of time arguing that other issues of fact do or do not exist, namely, whether Chaim Gurevitch proximately caused the accident by parking on the shoulder of the road; whether he could have pulled into the driveway of the house he was visiting; or whether his car had its lights on. (D.E. 103 at 13-14, 17-18; D.E. 104 at 3-6.) Defendant submits that these considerations are relevant in determining whether or not she was negligent, (D.E. 103 at 14), but this does not alter the Court's conclusion that on the papers, a genuine issue as to negligence exists.

### 2. UFTA Claim

Next, plaintiff argues that defendant transferred real property[3] with the intent, either actual or constructive, to defraud her potential creditors in violation of the UFTA. (D.E. 101-2 at 16-23.) Plaintiff contends that because of these transfers, defendant became insolvent. (*Id.*) Plaintiff asserts that since "all the transfers were made for the benefit of John [Lee]," the Court should allow plaintiff to pursue any judgment she obtains against John Lee. (*Id.* at 24.)

---

[3] On June 22, 2022, plaintiff removed the bona fide purchasers of 31 Melrose Terrace from the action. (D.E. 44.) Consequentially, the underlying property transfers at issue are the transfers of 27 Melrose Terrace, 29 Melrose Terrace, and the money in John Lee's Wells Fargo bank account. (*See* D.E. 101-2 at 18-20.)

Defendant responds that her property transfers were made pursuant to an estate plan and in response to an ovarian cancer diagnosis giving her six weeks to live. (D.E. 103 at 20-23.) Defendant submits that at the time of the accident she was adequately insured on an automobile policy with a $250,000/$500,000 combined single limit, and plaintiff has provided no evidence that defendant's insurance and current assets are insufficient to pay whatever judgment she may ultimately obtain. (*Id.* at 4, 20, 23.)[4]

The UFTA[5] provides:

a.  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)  With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

   (a)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

   (b)  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

---

[4] Defendant also contends that the UFTA claim is premature since plaintiff has not yet obtained a judgment against her (D.E. 103 at 20-23), reiterating arguments rejected by Magistrate Judge Waldor (D.E. 77, 81). However, it is not necessary for a creditor to have already obtained a judgment in order to seek relief under the UFTA; a creditor need only have a "claim" against the debtor, which is defined broadly. *See* N.J.S.A. 25:2-21.

[5] The UFTA was amended on August 10, 2021, and states that its provisions "shall not apply to a transfer made or obligation incurred before its effective date." N.J.S.A. 25:2-35. Since all the transfers at issue were made prior to August 2021, the Court will rely on the earlier version of the UFTA.

N.J.S.A. 25:2-25. If the creditor proves the elements of N.J.S.A. 25:2-25(a)(1), this amounts to actual fraud; if he or she proves the elements of N.J.S.A. 25:2-25(a)(2), this amounts to constructive fraud. *See In re Lopresti*, 2006 WL 2708605, at *10-11 (Bankr. D.N.J. Sept. 20, 2006) (Burns, J.). Under the pre-2021 version of the UFTA, a creditor must prove the elements of his or her claim by clear and convincing evidence. *Compare Nat'l Enters., Inc. v. Wong & Fleming*, 2012 WL 1079826, at *6 (D.N.J. Mar. 30, 2012) (Pisano, J.) (outlining clear and convincing evidence standard under N.J.S.A. 25:2-25) *with* N.J.S.A. 25:2-25(b) (2021) (changing a plaintiff's burden of proof to a preponderance of the evidence standard).

When analyzing an actual fraud cause of action under the UFTA, courts in this district must make two inquiries: "(1) 'whether the debtor or person making the conveyance has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance' and (2) 'whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor.'" *Bell Container Corp. v. Palagonia Bakery Co.*, 2022 WL 2439532, at *7 (D.N.J. July 5, 2022) (Vazquez, J.) (quoting *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475-76 (1999)). These inquiries "involve fact-specific determinations that must be resolved on a case-by-case basis." *Gilchinsky*, 159 N.J. at 476.

Since "direct proof of actual fraudulent intent is rare," courts generally look to the non-exclusive list of factors provided in N.J.S.A. 25:2-26—commonly referred to as "badges of fraud"—for determining actual intent. *In re Truong*, 285 F. App'x 837, 839 (3d Cir. 2008) (citation omitted). These "badges of fraud" permit courts to consider whether:

a. The transfer or obligation was to an insider;

b. The debtor retained possession or control of the property transferred after the transfer;

c. The transfer or obligation was disclosed or concealed;

10

    d.  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    e.  The transfer was of substantially all the debtor's assets;

    f.  The debtor absconded;

    g.  The debtor removed or concealed assets;

    h.  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    i.  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

    j.  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

    k.  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2-26. No one single factor is dispositive, as the court "should balance the factors enumerated in N.J.S.A. 25:2-26, as well as any other factors relevant to the transaction." *Gilchinsky*, 159 N.J. at 477. Where several indicators are present in relation to an allegedly fraudulent transaction, "a strong inference of fraud arises," which a party can rebut by supplying clear evidence of "a sufficient explanation." *Id.* at 476, 484. However, "[t]he question of a person's intent is frequently ill-suited for disposition at summary judgment." *United States v. Bradley*, 2020 WL 244008, at *2 (D.N.J. Jan. 16, 2020) (Bumb, J.).

    Here, plaintiff contends that five or six badges of fraud are applicable to the transfers: N.J.S.A. 25:2-26(a), (b), (e), (h), (i), and (j). (D.E. 101-2 at 17-18.) Plaintiff also asks the Court to consider an additional factor, that these transfers all took place within four months of the fatal accident. (*Id.* at 17.)

11

First, it is apparent that defendant transferred her property to an insider, her son John Lee. *See* N.J.S.A. 25:2-22 ("'Insider' includes: . . . [a] relative of the debtor[.]"). Therefore, factor (a) is present.

Second, as to factor (b)—whether defendant retained control of the property after the transfer—it is undisputed that defendant still lives at 27 Melrose Terrace, but she is not in possession of 29 Melrose Terrace or the funds in John Lee's Wells Fargo bank account. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 9; D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 32, 39; Curtis Dep. at 46:17-47:10.) Factor (b) is therefore only present with respect to the 27 Melrose Terrace transfer.

Third, as to factor (h)—the value of the consideration received—it is undisputed that 27 Melrose Terrace and 29 Melrose Terrace were transferred to John Lee for only $1.00 each and it appears that the funds in the Wells Fargo bank account were not transferred for any consideration. (D.E. 105, FPTO § 5, Stipulated Facts, ¶¶ 6, 8; Curtis Dep. at 46:17-47:10.) Factor (h) is therefore present.

Plaintiff has proffered very little evidence as to the rest of the factors she identifies. She argues that factor (e)—transfer was of substantially all defendant's assets—and factor (i)—near the time of the transfer whether defendant was insolvent—are present, based on defendant's admission that 27, 29, and 31 Melrose Terrace were the only parcels of property that she owned. (D.E. 101-3, Pl. R. 56.1 Stmt. ¶ 14; D.E. 103-1, Def. R. 56.1 Counterstatement ¶ 16.) However, it is not clear in this record if these transfers, plus the Wells Fargo account funds, were the *only* assets that defendant owned or presently owns. *See* N.J.S.A. 25:2-23(a). For example, John Lee testified that defendant has another personal bank account in addition to the Wells Fargo account she created for him. (John Lee Dep. at 50:21-51:1 ("Q. Prior to opening that [Wells Fargo]

12

account . . . did [defendant] have the moneys left over from the payment of the expenses for the renovation and the home equity loan in her own name in some account? A. That's my understanding. Yes.").)

Plaintiff also fails to demonstrate that defendant is not paying her debts as they become due,[6] as it appears that defendant has arranged for her debts to be timely paid by John Lee. (*See* Curtis Dep. at 45:14-47:10; John Lee Dep. at 46:23-47:14, 49:18-50:20 ("I've been paying her daily -- whatever expenses she has to pay out of that account since that date [July 7, 2021].").) Plaintiff concludes that because of the transfers, she "believes" defendant to be insolvent; defendant counters that plaintiff has not demonstrated that her "insurance and current assets are insufficient to pay whatever judgment they might ultimately obtain." (D.E. 101-2 at 17-20; D.E. 103 at 20.) There is therefore an issue of material fact as to whether defendant is indeed insolvent.[7] *See Bradley*, 2020 WL 244008, at *2 (denying summary judgment where the United States proffered "very little evidence" of the debtor's insolvency).

Factor (j)—transfer occurred shortly after a substantial debt was incurred—is also not present, as there is no substantial debt presently owed by defendant to plaintiff.

---

[6] The Court also notes that it appears plaintiff is relying on the 2021 version of the UFTA for the proposition that, under N.J.S.A. 25:2-23(b), once a presumption of insolvency applies the burden of proving the debtor's solvency "shifts" to the debtor or transferee. (D.E. 101-2 at 19.) However, this burden shifting was not in the earlier statutory text of the UFTA, so the Court will not consider it.

[7] This issue also precludes plaintiff's claim for constructive fraud since she did not proffer any evidence that defendant's remaining assets "were unreasonably small in relation to the business or transaction," N.J.S.A. 25:2-25(a)(2)(a); that defendant reasonably should have believed she would incur debts beyond her ability to pay, N.J.S.A. 25:2-25(a)(2)(b); or that defendant "became insolvent as a result of the transfer or obligation," N.J.S.A. 25:2-27(a). Plaintiff has therefore failed to prove defendant's alleged insolvency by clear and convincing evidence.

Moreover, while all the transfers took place after the accident, defendant has offered evidence of her estate plan dating back to 2013. (D.E. 103-1, Def. R. 56.1 Counterstatement ¶¶ 14-42.) This history supports the existence of a genuine issue of material fact. *Gilchinsky*, 159 N.J. at 484; *see Bell Container*, 2022 WL 2439532, at *8 (denying summary judgment as to the plaintiff's UFTA claim where it was disputed whether the defendant entered into the contract with an intent to defraud); *City of Atl. City v. Zemurray St. Cap., LLC*, 2017 WL 6638203, at *20 (D.N.J. Dec. 29, 2017) (Kugler, J.) (same); *cf Thor 725 8th Avenue LLC v. Goonetilleke*, 2019 WL 5304146, at *4-5 (D.N.J. Oct. 17, 2019) (Arleo, J.) (finding summary judgment proper where the defendants admitted to their insolvency and transferred property the day after judgment was entered against them).

Taking the facts in the light most favorable to defendant, the Court denies plaintiff's motion for summary judgment as to the fraudulent transfer claim.

### B. Defendant's Motion for Partial Summary Judgment

Defendant argues that plaintiff's punitive damages claim, as it relates to the alleged fraudulent property transfers, should be summarily dismissed because plaintiff has not alleged any evidence of actual malice or wanton and willful disregard to those who might be foreseeably harmed. (D.E. 102-1 at 1-2, 9-11.) Defendant reiterates that these property transfers were initiated pursuant to a long-standing estate plan, accelerated in response to a diagnosis that she was dangerously ill, and completed without any malicious intent. (*Id.* at 10.) She points to the deposition of her attorney, Carmine Liotta, who testified about her and John Lee's estate plan.

> Q. Did [defendant] indicate to you in any way that [b]y transferring any of these properties that her desire was to prevent the plaintiff in this case from obtaining assets?
>
> A. That was never an issue. It was never an issue, it was a continuation of her concern about what she went through with her sister and her mother, and the cost

14

> of it, the financial cost. And she wanted to make sure that John had the money to take care of it.

(*Id.* at 10-11 & Ex. F, Deposition of Carmine Liotta at 26:15-27:13.) Defendant also notes that on February 26, 2024, plaintiff voluntarily dismissed her claim for punitive damages relating to the accident. (D.E. 95.) Plaintiff did not file an opposition to this motion.

New Jersey law provides that punitive damages claims are only permitted

> if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J.S.A. 2A:15-5.12(a). As defined by the New Jersey Supreme Court, actual malice is "nothing more or less than intentional wrongdoing—an evil-minded act." *Di Giovanni v. Pessel*, 55 N.J. 188, 191 (1970) (citation omitted); *see* N.J.S.A. 2A:15-5.10 (same). Willful and wanton conduct has been described as the "conscious and deliberate disregard of the interests of others." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 50 (1984) (citation omitted); *see* N.J.S.A. 2A:15-5.10 ("'Wanton and willful disregard' means a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission.").

Punitive damages are to be awarded only in "exceptional cases" to punish the defendant and deter others from following his or her example. *Di Giovanni*, 55 N.J. at 190-91. "The key to the right to punitive damages is the wrongfulness of the intentional act. The right to award exemplary damages primarily rests upon the single ground—wrongful motive." *Nappe*, 97 N.J. at 49 (cleaned up). On the contrary, "mere negligence, however 'gross,' is generally held not to be enough." *Id.* at 50 (citing *Di Giovanni*, 55 N.J. at 190).

15

Here, the Court finds that plaintiff has not established that this is such an exceptional case to warrant a claim of punitive damages. Plaintiff does not specifically allege any facts to support a finding of actual malice or wanton and willful disregard. Rather, plaintiff merely points to defendant's conduct in initiating the transfers, and the badges of fraud present, to argue she had actual intent to defraud. (D.E. 101-2 at 16-23.) But as discussed above, the two or three badges of fraud present are insufficient to prove by clear and convincing evidence that defendant had actual or constructive intent to defraud under the UFTA. And the remaining factors, even when viewed in light most favorable to plaintiff, are not supported by evidence but are conclusory allegations that defendant is insolvent, which is insufficient to defeat defendant's motion for summary judgment.

Since the record is devoid of any evidence that defendant had a malicious intention to place her assets out of reach of potential creditors, or that she had actual awareness that potential creditors may be harmed by the transfers and deliberately disregarded that risk, plaintiff cannot sustain her claim for punitive damages. Accordingly, the Court grants defendant's motion for partial summary judgment.

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied and defendant's motion for partial summary judgment as to punitive damages is granted. An appropriate Order to this effect will be entered. Anticipating trial, the Order will set forth a schedule for motions in limine.

Dated: November 27, 2024                /s Katharine S. Hayden
                                        Katharine S. Hayden, U.S.D.J.